IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK A. WANGLER, | ) | CASE NO. 3:13-cv-02598 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| EDWARD T. SHELDON, Warden, | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner Mark A. Wangler ("Petitioner" or "Wangler"), represented by counsel, filed this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1.  Respondent filed a Return of Writ.  Doc. 8.  Petitioner filed a Traverse (Doc. 9) and Supplement to Traverse (Doc. 10).[1]

Wangler challenges the constitutionality of his conviction and sentence in *State v. Wangler*, Case No. CR2009 0298 (Allen County).  Following a jury trial, Wangler, a medical doctor,[2] was convicted of and sentenced on one count of aggravated murder for the death of his wife, Kathy Wangler.  Doc. 8-1, pp. 5-6, 269-275.  The trial court sentenced Wangler to life imprisonment with parole eligibility after serving 25 full years of imprisonment.  Doc. 8-1, p. 274.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  For the reasons set forth below, the undersigned recommends that Wangler's Petition (Doc. 1) be **DISMISSED and/or DENIED**.

---

[1] In his supplemental briefing, Petitioner provides an update to Ohio law.  Doc. 10. Petitioner did not seek leave to file supplemental briefing but Respondent did not object to the supplemental filing.  The undersigned has considered Petitioner's supplemental briefing in light of Respondent's lack of objection, and notwithstanding the absence of a request for leave to file the supplemental briefing.

[2] Wangler's specialty was anesthesiology.  *See e.g.,* Doc. 8-5, pp. 84-86, 124.

# I.    Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); see also *Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Ohio Court of Appeals summarized the facts underlying Wangler's conviction as follows:

> {¶ 2} On the night of September 4, 2006, Mark and his wife, Kathy Wangler ("Kathy"), were asleep in their residence. That night, Kathy slept in a bedroom located on the second floor, while Mark slept in the master bedroom located on the first floor. At 5:18 a.m., the Allen County Sheriff's Office ("the Sheriff's Office") received a 911 call from Mark exclaiming that the carbon monoxide ("CO") alarm in his residence was sounding and that Kathy, a diagnosed epileptic, was having a seizure. During the 911 call, but prior to the arrival of emergency services, Mark informed the dispatcher that he had opened the windows in Kathy's bedroom and began performing CPR on Kathy.

> {¶ 3} At approximately 5:22 a.m., Chief Joseph Kitchen ("Chief Kitchen"), Bath Township's Fire Chief, was the first of the emergency services personnel to arrive at the residence. Upon entering the residence, Chief Kitchen heard the CO alarm sounding. Mark escorted Chief Kitchen to Kathy's bedroom where he found Kathy lying with her torso on an air mattress and her legs on the floor. Upon checking Kathy's vital signs Chief Kitchen discovered that Kathy was not breathing and had no pulse. As a result, Chief Kitchen proceeded to slide Kathy off the air mattress and began CPR.[1] At approximately 5:23 a.m., the Bath Township EMS arrived on scene and began advanced life support procedures. During this time, Kathy was placed on a cardiac monitor, which revealed that Kathy was in asystole, which is colloquially known as flatline, i.e., there was no electrical activity in her heart. Because of her condition and failure to respond to advanced life support procedures, Kathy was transported to Lima Memorial Hospital ("the hospital"), where she arrived at 5:45 a.m. Shortly after Kathy was transported to the hospital, a sheriff's deputy transported Mark to the hospital for treatment.

> > [FN 1] At trial, Kitchen, as well as other medical professionals, testified that in order to properly administer CPR the victim must be lying on a solid surface.

> {¶ 4} Upon arrival at the hospital, Dr. Rina Stein, the attending emergency physician, examined Kathy noting that her jaw was stiff and difficult to open, her neck was stiff, her skin was pale and cool to the touch, her internal body

temperature was 95.5 degrees Fahrenheit, and her body was exhibiting signs of posterior lividity. Despite continued efforts to resuscitate Kathy, she was officially declared dead at 5:54 a.m. Based on the condition of Kathy's body, it was Dr. Stein's opinion that Kathy had died before she arrived at the hospital.

{¶ 5} Mark arrived at the hospital shortly after Kathy, and was treated for CO poisoning. At the hospital, Mark was found to have a carboxyhemoglobin level of 13%.[2] Mark was released from the hospital at 10:54 a.m.

> [FN 2] Carboxyhemoglobin is defined as "a very stable combination of hemoglobin and carbon monoxide formed in the blood when carbon monoxide is inhaled with resulting loss of ability of the blood to combine with oxygen." Merriam–Webster (2012), http://www.merriam-webster.com/medical/carboxyhemoglobin (accessed October 15, 2012).

{¶ 6} After Kathy was transported to the hospital, at approximately 5:40 a.m., Cledus Hawk II ("Hawk"), a firefighter with the Bath Township Fire Department, entered the residence to measure CO levels. Initially, Hawk proceeded to the basement where his measuring instrument, a four gas analyzer ("analyzer"), measured a CO level of 50 parts per million ("ppm"). As a result of the reading, Hawk exited the residence and equipped himself with a self-contained breathing apparatus ("SCBA"). Several minutes after Hawk exited the residence, he reentered the residence and again proceeded to the basement. This time the analyzer measured a CO level of 35–30 ppm. At 6:00 a.m., Hawk closed all of the windows in the residence and waited approximately an hour before he reentered the residence. At 7:10 a.m., Hawk reentered the residence and proceeded to the basement where the analyzer measured a CO level of 20–15 ppm. After taking a reading in the basement, Hawk proceeded to Kathy's bedroom. There, the analyzer measured a CO level of 25–20 ppm. Shortly thereafter, Hawk returned to the basement and held the analyzer near the natural gas-fired water heater and furnace for several minutes and found that the CO levels near those appliances were the same as those measured throughout the basement.

{¶ 7} After the residence was deemed safe for entry without a SCBA, Sergeant Philip Sherrick ("Sergeant Sherrick"), a deputy with the Sheriff's Office, conducted a walkthrough of the residence. Upon inspecting Kathy's bedroom, Sergeant Sherrick observed soot-like markings on the wall directly above a register located in the floor. Sergeant Sherrick then continued to the master bedroom. Upon entering the master bedroom, Sergeant Sherrick noticed a pungent sulfur-like order emanating from the en-suite master bathroom. Upon entering the master bathroom, Sergeant Sherrick observed that the carpet around the toilet was wet, a floor fan was running, and the bathroom window was open. Thereafter, Sergeant Sherrick continued to the basement. The basement had two staircases, one leading into the residence and one leading into the garage. After examining

the basement, Sergeant Sherrick continued to the garage where he observed two vehicles parked inside the garage, as well as a lawn mower, snow blower, and gas powered generator. Outside the garage, Sergeant Sherrick observed an RV and another vehicle parked in the driveway.

{¶ 8} After conducting a walkthrough of the residence, Sergeant Sherrick drove to the hospital. Sergeant Sherrick arrived at the hospital at approximately 8:15 a.m. and spoke with Mark. During their conversation, Mark explained that he awoke to the CO alarm sounding, that he went upstairs to check on Kathy and found her having what he perceived to be a seizure, that he went back downstairs to call 911, and that he conducted CPR until emergency services personnel arrived. Mark also explained that the furnace and water heater had been replaced two years prior, and that the wind would periodically blowout the water heater's pilot light.

{¶ 9} On the morning of Kathy's death, Jan Zuber ("Zuber"), a customer service representative for Old Dominion Gas Company, arrived at the residence to determine the source of the CO. Zuber sealed the residence (i.e., closed the windows and doors) and ran the furnace and water heater one at a time. As each appliance was running, Zuber walked throughout the residence measuring the CO levels. During the testing, the highest measurement of CO detected in the residence was 3 ppm. Zuber also inspected the furnace and water heater and determined that each appliance was properly operating. Despite this determination, Zuber placed a red tag on the water heater because of a code violation concerning the height of the water heater's flue outside the residence.

{¶ 10} On September 5, 2006, Dr. Diana Barnett ("Dr.Barnett"), a forensic pathologist and deputy coroner with the Lucas County Coroner's Office, performed Kathy's autopsy. As part of the autopsy, Dr. Barnett sent samples of Kathy's blood to Dr. Robert Forney, chief toxicologist with the Lucas County Coroner's Office. Kathy's blood had a carboxyhemoglobin level of 69.6%. Based on Kathy's carboxyhemoglobin level, Dr. Barnett concluded that Kathy died of acute CO poisoning. Upon review of Kathy's emergency room records, it was Dr. Barnett's opinion that Kathy died one to two hours before arriving at the hospital.

{¶ 11} On the morning of September 6, 2006, Steve Erlenbach ("Erlenbach"), an engineer with SEA Limited, a forensic investigation firm, was contacted by the Sheriff's Office and asked to investigate Mark and Kathy's CO poisoning. Erlenbach arrived at the residence at approximately noon the same day and began his investigation. First, Erlenbach conducted a walkthrough of the residence. During his walkthrough, Erlenbach observed and photographed soot stains on the wall above the register in Kathy's bedroom, as well as soot-stained carpet underneath the same register. Erlenbach noted that the residence contained three natural gas-fired appliances, to wit: a furnace; a water heater; and gas fireplace. All three natural gas-fired appliances were located in the basement. During his investigation, Erlenbach operated the furnace, water heater, and gas fireplace one at a time under different conditions (i.e., basement door open and closed,

4

bathroom exhaust fans on and off, windows open and closed). After testing each appliance, Erlenbach determined that each appliance was properly operating and detected no abnormal or unsafe levels of CO emanating from the appliances. Though Erlenbach determined that the water heater was properly operating, he did find that the flue from the water heater extending outside the residence was in violation of the National Fuel Gas Code, because it did not extend high enough in the air.

{¶ 12} Following his investigation, in October 2006, Erlenbach sent the Sheriff's Office a report detailing his investigation, analysis, and conclusions. Erlenbach's report contained the following conclusions:

> SEA testing of the gas appliances within the Wangler home showed no source of fugitive carbon monoxide (outside of a small amount of carbon monoxide emitted from a vent-free fireplace).

> The levels of carbon monoxide emitted from the vent-free fireplace fall well within acceptable exposure limits set by OSHA and ASHRAE (American Society of Heating, Refrigeration, and Air–Conditioning Engineers) and were not causal to the incident.

> The vent for the water heater was not of sufficient height according to the National Fuel Gas Code (NFPA 54).

> If Mr. Wangler's story about the water heater pilot light is true, then the water heater has a venting problem that occurs under certain conditions. This problem could be allowing products of combustion (including CO) to backdraft through the water-heater vent and into the home. According to Mr. Wangler, there was hot water use the night preceding the incident.

> Additional testing would be required to test venting performance under different outdoor conditions.

> If it is true that Mrs. Wangler had a carboxyhemoglobin (COHb) level of 69%, she would had to have been exposed to CO levels in excess of 1200 ppm. The fact that Mr. Wangler was in a room with the windows open and a fan running could explain why his COHb levels were so much lower than his wife's.

> Additional testing would be required to determine the cause of the staining near the supply-air registers.

> SEA cannot eliminate the possibility of a car running in the attached garage as a potential source of carbon monoxide in the home. October 2, 2006 SEA Report, p. 2.

5

{¶ 13} In April 2007, then Sergeant Clyde Breitigan ("Sergeant Breitigan"), a deputy with the Sheriff's Office, filed an affidavit ("April affidavit") in support of a warrant to search the Wangler residence. In the April affidavit, Sergeant Breitigan made clear that the Sheriff's Office sought the requested items in relation to the offense of aggravated murder.[3] The warrant ("April search warrant") was granted and executed on April 24, 2007. During the execution of the April search warrant, law enforcement, including Sergeant Breitigan, seized various items, including but not limited to, a personal computer, a laptop, various computer accessories, various data storage devices, a portable GPS unit, miscellaneous papers, three handwritten journals, cash, credit cards, jewelry, and books.

> [FN 3] The requested items will be discussed in further detail below.

{¶ 14} In October 2007, Sergeant Fred Depalma ("Sergeant Depalma"), a deputy with the Sheriff's Office, contacted the Lab and spoke with the Lab's program director, Dr. Jamie Schauer ("Dr.Schauer"). Sergeant Depalma asked Dr. Schauer whether the Lab was capable of testing for and detecting particles emitted from an internal combustion engine ("engine"), to which Dr. Schauer responded in the affirmative.

{¶ 15} In November 2007, Sergeant Breitigan, based on the items seized under the April search warrant and the testing capabilities of the Lab, filed an affidavit ("November affidavit") in support of a second warrant to search the Wangler residence. The warrant ("November search warrant") was granted and executed on November 15, 2007. During the execution of the November search warrant, law enforcement, including Sergeant Breitigan, seized various items, including but not limited to, ductwork, the register from Kathy's bedroom, and a swatch of carpet surrounding the same register. These items were sealed and stored in the Sheriff's Office's evidence room, where they remained until they were transported to the Lab.

{¶ 16} On January 29, 2008, Sergeant Depalma transported the items seized under the November search warrant, as well as several control samples, to the Lab. On September 11, 2009, the Lab sent the Sheriff's Office a report ("the Report") authored by Dr. Schauer detailing the Lab's analysis and his conclusions. In the Report, Dr. Schauer concluded that molecular tracers found in the soot collected from the duct work were commonly found in soot emitted from an engine.[4]

> [FN 4] We note that in addition to the Report issued by the Lab in September 2009, Dr. Schauer authored a revised version of the Report in February 2011, in which he explained the Lab's analysis and his conclusions in further detail.  The State admitted the revised Report at trial.

*State v. Wangler*, 2012 WL 5207546, *1-5 (Ohio App. Oct. 22, 2012); *see also* Doc. 8-1, pp. 491-500 (Third District Ohio Court of Appeals Judgment Entry, Case No. 1-11-18).

## II.      Procedural Background

### A.      State Conviction

#### 1.   Indictment and plea

On September 17, 2009, an Allen County Grand Jury indicted Wangler on one count of aggravated murder in violation of O.R.C. § 2903.01(A).  Doc. 8-1, pp. 5-6.  Wangler pleaded not guilty on September 22, 2009.  Doc. 8-1, p. 6.

#### 2.   Pre-trial motions

Wangler filed various pre-trial motions in 2009, including (1) a motion to suppress or in the alternative motion in limine to exclude attorney-client privileged material (Doc. 8-1, pp. 7-10); (2) a motion to suppress or in the alternative motion in limine to exclude hearsay statements allegedly made by the decedent prior to her death regarding her suspicion that Wangler might attempt to kill her (Doc. 8-1, pp. 11-16); (3) a motion to disclose names of grand jury witnesses (Doc. 8-1, pp. 36-37); (4) motion to compel law enforcement officers to turn over and advise prosecuting attorney of all information acquired during the course of investigation (Doc. 8-1, p. 37); (5) motion for inspection of grand jury testimony (Doc. 8-1, p. 37); (6) motion to compel disclosure of exculpatory evidence (Doc. 8-1, p. 37); (7) motion to exclude photographs of the deceased (Doc. 8-1, pp. 37-38); (8) motion for open discovery (Doc. 8-1, p. 38); (9) a motion for return of seized property and for suppression of all evidence seized pursuant to a search warrant issued April 23, 2007 (Doc. 8-1, pp. 17-27); and (10) motion for return of seized property and for suppression of all evidence seized pursuant to a search warrant issued on November 15, 2007 (Doc. 8-1, pp. 28-34).

A hearing was conducted on December 21, 2009, wherein the trial court addressed the

pre-trial motions.  Doc. 8-15.  On December 28, 2009, the trial court entered orders on all but the

two motions to suppress the evidence seized pursuant to the April 23, 2007, and November 15,

2007, search warrants.[3]  Doc. 8-1, pp. 35-38.  As requested by the trial court, on January 12,

2010, further briefing was filed by Wangler and the State with respect to the motions to suppress.

Doc. 8-1, pp. 39-76.   Wangler's contentions with respect to both the April 2007 and November

2007 search warrants included his claim that the Allen County Sheriff's Department exceeded

the scope of both warrants by seizing items not identified in the warrants.   Doc. 8-1, pp. 17-34,

39-66.  On January 20, 2010, with the exception of the seizure of cash money, the trial court

overruled and denied Wangler's motions to suppress (Doc. 8-1, pp. 77-84), finding that the

affidavits provided sufficient probable cause to issue the search warrants and that the seizure of

paper related documents and carpet from vent cover did not exceed the scope of the warrants

(Doc. 8-1, p. 84).  Alternatively, the trial court found that the searches were upheld pursuant to

the "good faith exception."  Doc. 8-1, p. 84.

On August 11, 2010, Wangler filed a motion in limine to exclude expert testimony

relating to tests performed by James Jay Schauer – Wisconsin State Laboratory of Hygiene

("Lab").  Doc. 8-1, pp. 85-197.   On September 28, 2010, the trial court conducted a *Daubert*

---

[3] With respect to Wangler's motion concerning attorney-client privileged material, the trial court stated that the State had indicated and acknowledged on the record that it would not be admitting the letters that Wangler contended were protected by attorney-client privilege.  Doc. 8-1, p. 35.  With respect to Wangler's motion for suppression of alleged statements made by the decedent prior to her death, the trial court indicated that the motion was a motion in limine and deferred any ruling on that testimony until the issue was raised at trial.  Doc. 8-1, p. 36.  The trial court denied/overruled Wangler's motion to disclose the names of grand jury witnesses; motion to compel law enforcement officers to turn over and advise prosecuting attorney of all information acquired during the course of investigation; and motion for inspection of grand jury testimony.  Doc. 8-1, pp. 36-37.  The trial court indicated that the State was obligated to comply with Crim. R. 16 and provide defendant with all "Brady" material.  Doc. 8-1, pp. 36-37.  With respect to Wangler's motion to compel disclosure of exculpatory evidence, the trial court indicated that the State had no objection to the motion and ordered that the State shall provide all exculpatory evidence as required by law.  Doc. 8-1, p. 37.  Regarding Wangler's motion for open discovery, the trial court ordered the State to comply with Crim. R. 12 as it was currently in effect and stated that, if after July 1, 2010, other rules became relevant, the court would modify the discovery order as provided by law.  Doc. 8-1, p. 38.

hearing to determine admissibility of the Lab's expert testimony and determined that the testimony was admissible.  Doc. 8-1, pp. 210-214.  Also, on September 28, 2010, the trial court issued a conditional order regarding potential hearsay statements made by the decedent, granting in part and denying in part Wangler's motion in limine.  Doc. 8-1, pp. 215-218.

On January 3, 2011, Wangler filed motions for reconsideration regarding the trial court's rulings that James J. Schauer's mathematical calculations regarding deposition velocity; Elemental Carbob – Organic Carbon ("ECOC") test results; and check standards (used to determine stability in the calibration of the instrument used to analyze the compounds found in the duct work of Wangler's home) were not discoverable.  Doc. 8-1, pp. 219-228, 229-258, 259-262.  On January 19, 2011, the trial court overruled Wangler's motions for disclosure of deposition of velocity data and ECOC results and granted Wangler's motion for disclosure of check standards.  Doc. 8-1, pp. 263-264.

### 3.  Trial and conviction

A jury trial commenced on February 28, 2011 (Doc. 8-1, p. 269), and concluded on March 16, 2011,[4] with the jury returning a guilty verdict on the charge of aggravated murder (Doc. 8-1, pp. 272-273).  Doc. 8-1, pp. 269-275.  Wangler was represented at trial by attorney Christopher R. McDowell.  Doc. 1, p. 23; Doc. 8-1, p. 269.  The trial court sentenced Wangler to life imprisonment with parole eligibility after serving 25 full years of imprisonment.  Doc. 8-1, p. 274.

### 4.  Motion for acquittal

On March 29, 2011, Wangler filed a motion for acquittal.  Doc. 8-1, pp. 276-287.  The State filed its response to Wangler's motion for acquittal on April 6, 2011.  Doc. 8-1, pp. 288-

---

[4] On March 9, 2011, the trial court denied Wangler's motion in limine to exclude from trial diary writings Wangler purportedly made prior to the death of his wife, Kathy Wangler.  Doc. 8-1, pp. 265-268.

301.  On April 8, 2011, the trial court overruled and denied Wangler's motion for acquittal.  Doc.

8-1, pp. 302-313.

**B.  Direct appeal**

On April 12, 2011, while continuing to be represented by trial counsel, Attorney

McDowell, Wangler filed an appeal from his conviction and sentence to the Third District Court

of Appeals.  Doc. 8-1, pp. 314-322.  In his appellate brief filed on September 30, 2011, (Doc. 8-

1, pp. 323-415), Wangler raised four assignments of error:

1. The trial court erred by refusing to suppress the evidence obtained pursuant to
   unconstitutional search warrants.

2. The trial court erred by refusing to exclude the state's expert testimony.

3. The trial court erred by excluding the testimony of Dr. Wangler's expert
   witness, Frederick A. Teeters.

4. Dr. Wangler was denied a fair trial as a result of numerous discovery
   violations that denied him material evidence.

Doc. 8-1, pp. 324, 329-330, 341-365.  On November 9, 2011, the State filed its Brief.  Doc. 8-1,

pp. 416-469.  On November 30, 2011, Wangler filed a Reply Brief.  Doc. 8-1, pp.  470-488.  On

October 22, 2012, the Third District Ohio Court of Appeals affirmed the judgment of the trial

court.[5]  Doc. 8-1, pp. 489-555.

On November 1, 2012, Wangler filed a motion for reconsideration pursuant to Ohio App.

R. 26(A), seeking reconsideration of the Third District Court of Appeals' determination of

harmless error as to the unlawfully seized and used journals and reconsideration of the Third

District Court of Appeals' determination that trial counsel waived the issue as to the scope of the

November search warrant.  Doc. 8-1, pp. 605-627.  On November 14, 2012, the State filed its

---

[5] Also, on October 31, 2012, the Third District Court of Appeals denied as moot Wangler's October 22, 2012,
motion for leave to present additional authority (Doc. 8-1, pp. 556-603) because Wangler's motion was filed the
same day as the Court's opinion was released.  Doc. 8-1, p. 604.

response to Wangler's motion for reconsideration.  Doc. 8-1, pp. 628-631.  On December 5,

2012, the Third District Court of Appeals denied Wangler's motion for reconsideration finding

that "the application fails to raise any error in the decision or any issue not properly considered

in the first instance."  Doc. 8-1, pp. 632-633.

On January 15, 2013, Wangler, through the counsel,[6] filed a notice of appeal with the

Supreme Court of Ohio.  Doc. 8-1, pp. 634-635.  In his memorandum in support of jurisdiction

(Doc. 8-1, pp. 636-724), Wangler raised the following three propositions of law:

1.  Where evidence has been improperly admitted, a court may determine that it
    is harmless because it is cumulative of other properly introduced evidence
    only if there is a determination that the guilty verdict actually rendered in the
    case was unattributable to the error.  The mere fact that there is other evidence
    that covers that same subject matter is not, in and of itself, sufficient to
    determine that the error is harmless beyond a reasonable doubt.

2.  A trial court fails in its *Daubert* gatekeeper role when it admits scientific
    testimony that is not generally accepted or where there is an analytical gap
    between the accepted scientific premise and the conclusions of the expert.

3.  A trial court abuses its discretion when it improperly limits qualified expert
    testimony.

Doc. 8-1, pp.  637, 641-652.  On February 12, 2013, the State filed its memorandum in response.

Doc. 8-1, pp. 725-742.  On February 22, 2013, Wangler filed a notice of supplemental authority.

Doc. 8-1, pp. 743-744.  On April 24, 2013, the Supreme Court of Ohio declined jurisdiction.

Doc. 8-1, p. 745.

## C.    26(B) application to reopen

On January 13, 2013, Wangler, through counsel,[7] filed an application for reopening

pursuant to Ohio App. R. 26(B).  Doc. 8-1, pp. 746-759.  Wangler alleged ineffective assistance

of appellate counsel for failing to effectively argue and/or raise the following issues on appeal:

---

[6] Wangler continued to be represented by Attorney McDowell, the attorney who represented him at trial and in his appeal to the Third District Court of Appeals.  Doc. 8-1, p. 634.

1. Dr. Wangler was denied a fair trial as a result of numerous discovery violations that denied him material evidence.[8]

2. As Dr. Wangler was not alleged to have committed his conduct with any aggravating circumstance from R.C. §2929.04(A) applicable, Ohio law, due process, and the equal protection clause of the Ohio Constitution and the United States Constitution compel a sentence of 20 to life.

3. Dr. Wangler was denied the effective assistance of trial counsel as to the suppression motion.

4. The trial court should have excluded the "expert testimony" by witness Brenda Keller as to CPR techniques.

5. Dr. Wangler was denied the effective assistance of trial counsel for failure to raise privilege as to his journals.

6. Dr. Wangler was denied the effective assistance of trial counsel for failure to raise privilege as to statements made to Dr. Stein for medical treatment.

7. Dr. Wangler was denied the effective assistance of trial counsel for failure to object to Doyle-like errors as to being "uncooperative."

8. Dr. Wangler was denied the effective assistance of trial counsel for failure to seek suppression or exclusion of statements made by Dr. Wangler to Chief Kitchen.

9. The trial court erred by not striking the testimony of Jan Zuber and for making the ruling in front of the jury.

10. Dr. Wangler's conviction was against the manifest weight of the evidence.

Doc. 8-1, pp. 747-755.

On February 19, 2013, the State filed an opposition to Wangler's application for reopening.  Doc. 8-1, pp. 760-769.  On March 12, 2013, the Third District Court of Appeals denied Wangler's application for reopening finding that "the additional issues raised in

---

[7] Wangler continued to be represented by Attorney McDowell, counsel who represented him at trial and in his appeals to the Third District Court of Appeals and Supreme Court of Ohio.  Doc. 8-1, p. 746.  Wangler was also represented by co-counsel, Attorney Rexford, in his application to reopen.  Doc. 8-1, p. 746.

[8] Wangler argued that appellate counsel did not effectively argue on appeal which section of Crim. R. 16 compelled disclosure of the depositional velocity data.  Doc. 8-1, pp. 747-748.

Appellant's application fail to show any genuine issue as to whether he was deprived of the effective assistance of counsel on appeal."  Doc. 8-1, pp. 770-771.

On March 25, 2013, Wangler, through counsel,[9] filed a notice of appeal from the denial of his application for reopening with the Supreme Court of Ohio.  Doc. 8-1, pp. 772-773.  In his memorandum in support of jurisdiction (Doc. 8-1, pp. 774-793), Wangler raised twelve propositions of law.  Doc. 8-1, pp. 775.  The first two propositions of law were: (1) Mark Wangler was denied the effective assistance of appellate counsel; and (2) The Court of Appeals erred in denying Dr. Wangler's Application to Reopen Appeal.  Doc. 8-1, pp. 775, 776-777.  The remaining ten propositions of law raised the ten issues presented for review by Wangler in his application for reopening.  Doc. 8-1, pp. 775, 777-780.  On June 5, 2013, the Supreme Court of Ohio declined to accept jurisdiction of Wangler's appeal.  Doc. 8-1, p. 794.

**D.      Federal habeas corpus**

On November 22, 2013, Wangler, through counsel,[10] filed his Petition (Doc. 1) asserting five grounds for relief.[11]  Doc. 1, pp. 16-22.  Each ground for relief is discussed more fully below in Section III.B.

### III.      Law and Analysis

**A.      Standard of Review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

---

[9] Wangler was represented by Attorney Rexford.  Doc. 8-1, p. 772.

[10] Attorney McDowell filed Wangler's federal habeas petition.  Doc. 1, p. 15.  Wangler is also represented by co-counsel, Attorney Rexford.  Doc. 5.

[11] Each ground for relief contains supporting facts which are not reproduced herein.  Doc. 1, pp. 16-22.

AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). In particular, the controlling

AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law when 'the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application'

of clearly established federal law when 'the state court identifies the correct governing legal

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable

application' clause requires the state court decision to be more than incorrect or erroneous."

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established

law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state

court's decision "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v.

Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

14

This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. 86, 102-103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id*. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.**  **Grounds for Relief**

**1.  Ground  One**

> **Ground One**: Petitioner, Dr. Mark A. Wangler, is being held in violation of his Constitutional Rights and United States Supreme Court case law in that journals written by Petitioner were wrongfully seized from Petitioner's home in violation of Petitioner's Constitutional Rights and wrongfully admitted by the State of Ohio in the trial against him.

Doc. 1, pp. 16-17.

In Ground One, Wangler requests federal habeas review of his claim that journals[12] were wrongfully seized from his home pursuant to the April 2007 search warrant in violation of the Fourth Amendment and improperly admitted as evidence at trial.  Doc. 1, pp. 16-17, Doc. 9, pp. 9-31.  Respondent argues that, under *Stone v. Powell*, 428 U.S. 465 (1976), Wangler's Fourth Amendment claim is not subject to federal habeas review because Wangler had an opportunity for full and fair litigation of his Fourth Amendment claim in the state courts.  Doc.  8, pp. 16-21.

---

[12] The state court of appeals described the" journals" as: "[A] bound journal book entitled 'It's Not About Me Journal' which contains Mark's handwritten responses to prompts throughout the journal (State's Exhibit 45); a large blue binder with the phrase 'Cosmetic Training Kit' on the outside and numerous pages of Mark's handwritten autobiographical notes and impressions of his relationship with Kathy inside (State's Exhibit 46); and, a bound journal book entitled 'Revolve My Journal on Life, Faith & Other Stuff' which contains approximately two hundred pages filled with Mark's handwritten journal entries dated between December 31, 2005 and December 31, 2006 (State's Exhibit 47)."  Doc. 8-1, pp. 512-513, ¶ 39.

Following briefing and a hearing on Wangler's motion to suppress regarding the seized journals, the trial court denied Wangler's motion to suppress (Doc. 8-1, pp. 77-84), finding that "the Affidavits provided sufficient probable cause to issue the warrants . . . and the seizure of paper related documents . . . did not exceed the scope of the warrants . . . [and] [i]n the alternative, the Court finds the searches herein are upheld pursuant to the 'good faith exception.'" (Doc. 8-1, p. 84).    The state court of appeals considered Wangler's Fourth Amendment claim and found that the seizure of the journals exceeded the scope of the search warrant and the journals should not have been admitted at trial but concluded that their admission by the trial court was harmless error.  Doc. 8-1, pp. 518-522, ¶¶48-54.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held, "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone*, 428 U.S. at 494.   The Sixth Circuit has concluded that *Stone* does "not require that the court rule on the merits of each claim."  *Riley v. Gray*, 674 F.2d 522, 525 (6th Cir. 1982) (relying on *Moore v. Cowan*, 560 F.2d 1298 (6th Cir. 1977)).  Rather, "the state court need do no more than 'take cognizance of the constitutional claim and rule in light thereof.'"  *Id.*

In *Riley,* the Sixth Circuit, relying on *Stone* and *Moore v. Cowan*, set forth a two-step inquiry for determining whether *Stone* applies to bar federal habeas review of Fourth Amendment claims. *Riley*, 674 F.2d at 526-527; *see also Shepherd v. Warden, Pickaway Correctional Inst.*, 2011 WL 3664442, * 6 (S.D. Ohio May 31, 2011), *report and recommendation adopted*, 2011 WL 3652615 (S.D. Ohio Aug. 18, 2011).  First, "the district court must determine whether the state procedural mechanism in the abstract, presents the

opportunity to raise a fourth amendment claim." *Riley*, 674 F.2d at 526. "Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.* The Sixth Circuit more recently clarified that "the *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013), *cert. denied*, 135 S.Ct. 1174 (2015) (rejecting petitioner's claim that *Stone v. Powell* did not bar habeas review of his Fourth Amendment claim where the trial court did not conduct an evidentiary hearing on his motion to suppress); *see also Enyart v. Coleman*, 29 F.Supp.3d 1059, 1087 (N.D. Ohio Jul. 11, 2014) (discussing and quoting *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013)). The focus then is "on the *opportunity* for fair consideration presented by the state courts, not the procedure used in a given case to address the specific arguments of a given defendant." *Good*, 729 F.3d at 639. Thus, [i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedure for resolving the claim." *Id.* Instead, when considering whether a petitioner has had a full and fair opportunity to litigate his Fourth Amendment claim, the Sixth Circuit has stated that "our approach, and the majority rule, asks a more basic and readily administrable questions: Did the state courts permit the defendant to raise the claim or not?" *Enyart*, 29 F.Supp.3d at 1087 (quoting *Good*, 729 F.3d at 640).

With respect to the first inquiry under *Riley*, Ohio has a mechanism in place for resolving Fourth Amendment claims. It provides a defendant, such as Wangler, the opportunity to file a pretrial motion to suppress and the opportunity to take a direct appeal from the denial of the

motion to suppress.  *See Riley*, 674 F.2d at 526 (finding that Ohio criminal and appellate rules provide adequate procedural mechanisms for litigation of fourth amendment claims).

With respect to the second inquiry under *Riley*, Wangler has not demonstrated that presentation of his Fourth Amendment claim was frustrated by a failure of Ohio's procedural mechanism.  First, the trial court conducted a hearing on Wangler's motion to suppress the journals.  Doc. 8-15.  Additional briefing was ordered and filed regarding Wangler's motion to suppress.  Doc. 8-1, pp. 39-76, 8-15, pp. 72-75).   Thereafter, the trial court overruled and denied Wangler's motion to suppress.  Doc. 8-1, pp. 77-84.

Second, on appeal to the state court of appeals, Wangler presented his Fourth Amendment claim regarding the seized journals.  Doc. 8-1, pp.  341-352.  The state court of appeals considered that claim, finding that the seizure of the journals exceeded the scope of the search warrant and they should not have been admitted at trial but concluding that the trial court's admission of the journals was harmless error.  Doc. 8-1, pp. 518-522, ¶¶48-54; *see Chapman v. California*, 386 U.S. 18, 22 (1967) (recognizing application of harmless error with respect to constitutional violations).

Third, pursuant to Ohio App. R. 26(A), Wangler sought reconsideration of the state court of appeals' finding of harmless error as to the seizure and use of the journals.  Doc. 8-1, pp. 605-627.  Wangler argued that there was evidence that the journals did influence the jurors in their determination of guilt and that an evidentiary hearing should have been conducted in connection with the state court of appeals' harmless error analysis.  Doc. 8-1, pp. 606-620.  Wangler included in his application for reconsideration a discussion of the evidence he claims supported his contention that the state court of appeals had incorrectly determined that the admission of the journals was harmless error.  Doc. 8-1, pp. 616-620.  The state court of appeals considered

Wangler's application for reconsideration along with the State's opposition and found that the "application fail[ed] to raise any error in the decision or any issue not properly considered in the first instance" and denied the application.  Doc. 8-1, pp. 632-633.

Fourth, not satisfied with the state court of appeals' ruling on his application for reconsideration, Wangler appealed the state court of appeals' October 22, 2012, judgment as well as the state court of appeals' denial of his App. R. 26(A) application for reconsideration to the Supreme Court of Ohio.  Doc. 8-1, pp. 634-635.   In his memorandum in support of jurisdiction, Wangler's first proposition of law raised issues regarding the state court of appeals' harmless error finding.  Doc. 8-1, pp. 641-646.   The Supreme Court of Ohio declined jurisdiction.  Doc. 8-1, p. 794.

Notwithstanding the foregoing opportunities for full and fair litigation of his Fourth Amendment claim, Wangler, relying on *Riley, c*ontends that his Fourth Amendment claim should not be barred by *Stone* from federal habeas review because his ability to present his Fourth Amendment claim was frustrated by the state court of appeals' *sua sponte* harmless error determination.  Doc. 9, pp. 10-12.   In *Riley*, the state court of appeals found that there was no evidence that the petitioner had standing to challenge the search and therefore the state court of appeals concluded that it was unable to rule on the merits of the petitioner's Fourth Amendment claim and did not remand the matter to the trial court to allow the petitioner to establish standing. *Riley*, 674 F.2d at 526-528.  The Sixth Circuit concluded that the state court of appeals' *sua sponte* determination regarding standing and failure to remand to the trial court resulted in a situation where the petitioner, through no fault of his own, was deprived of an opportunity to fully litigate his claim and prevented the state court from considering the merits of the claim.  *Id.* at 527; *see also Matthew v. Foltz*, 786 F.2d 1165 (6th Cir. 1986) (Table) (noting that, in *Riley*,

there had been no briefing on the standing issue because the petitioner had relied on a rule of law that the appellate court refused to apply, and thus, the "appellate court created a situation in which the substantive fourth amendment claim was not considered").

Wangler's reliance upon *Riley* is misplaced and unpersuasive.  In *Moore*,[13] the Sixth Circuit rejected a petitioner's claim that *Stone* should not bar relitigation of a fourth amendment claim because, rather than discussing the merits of the petitioner's Fourth Amendment claim, the state appellate court had affirmed on harmless error grounds. 560 F.2d at 1302; *see also Griffin v. Rose*, 546 F.Supp. 932, 934-935 (E.D. Tenn. Aug. 24, 1981) (even though the state reviewing court had "upheld petitioner's arrest on a different legal theory than the lower courts and on a basis that the petitioner had not specifically addressed," the court found that the petitioner had an opportunity for full review of his Fourth Amendment claim such that further review was barred by *Stone v. Powell*).  Furthermore, in *Riley*, when discussing whether presentation of a petitioner's claim was in fact frustrated by a failure of a state procedural mechanism, the Sixth Circuit, in reliance upon *Moore*, recognized a "petitioner's opportunity to raise his claim may be legitimately frustrated by the state's procedural mechanism," noting for example, that "the harmless error doctrine may legitimately frustrate the petitioner's claim by rendering his fourth amendment claim immaterial."  *Riley*, 674 F.2d 526, n. 3; *see also Good*, 729 F.3d at 638-639 (discussing *Moore* and stating that, consistent with *Moore*, "the *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim").

---

[13] *Moore* was decided prior to *Riley* and discussed and relied upon by the Sixth Circuit in *Riley*.  *Riley*, 674 F.2d at 525.

Further, in contrast to the circumstances in *Riley*, Wangler had the opportunity to present his Fourth Amendment claim and the state courts took "cognizance of the constitutional claim and render[ed] a decision in light thereof." *Moore*, 560 F.2d at 1302. As discussed above, Ohio's Rules of Appellate Procedure allow for an application for reconsideration of any cause submitted on appeal and, pursuant to those procedures, Wangler sought reconsideration of the state court of appeals' harmless error determination. As part of that application for reconsideration, Wangler presented to the state court of appeals the evidence that he claimed demonstrated that the harmless error determination was incorrect. The state court of appeals considered Wangler's application for reconsideration but ultimately found it to be without merit.[14] Wangler had an opportunity to and did appeal the state court of appeals' decisions, including its harmless error determination and denial of his application for reconsideration, to the Supreme Court of Ohio. The Supreme Court of Ohio declined jurisdiction.

Wangler also contends that his case is different than both *Powell* and *Riley* because, in his case, the state court determined there was a Fourth Amendment violation whereas *Powell* and *Riley* dealt only with alleged violations. Doc. 9, p. 12. However, the state court of appeals' finding that there was a Fourth Amendment violation is not a factor that distinguishes Wangler's case in such a way as to preclude application of *Stone v. Powell*. For example, in *Stone v. Powell*, the state court of appeals found it unnecessary to address the legality of petitioner Powell's arrest and search because it found the error, if any, was harmless beyond a reasonable

---

[14] Wangler also contends that *Stone* does not bar consideration of his Fourth Amendment claim because the state court of appeals did not conduct an evidentiary hearing to allow for introduction of evidence not included in the record (Doc. 9, pp. 18-26). However, Wangler has failed to demonstrate that an evidentiary hearing in a direct appeal to allow for introduction of evidence outside the record was required in order for him to have had an opportunity for fair consideration of his claim in the state courts. *See e.g., Good*, 729 F.3d at 637-640 (no evidentiary hearing conducted on petitioner's suppression motion yet *Stone* applied to preclude habeas review of petitioner's Fourth Amendment claim).

doubt.[15]  428 U.S. at 470.   In *Gilmore v. Marks*, 799 F.2d 51(3rd Cir. 1986), the Third Circuit

held, "for purposes of the *Stone v. Powell* rule, a habeas petitioner's claim that a state appellate

court improperly found a Fourth Amendment violation to be harmless does not have a separate

identity and may not be raised in a habeas petition in federal court."  799 F.2d at 55.  The Third

Circuit went on to conclude, "Under *Stone v. Powell*, a federal court may not reexamine the state

court's determination that no Fourth Amendment violation occurred, that a violation had

occurred but that introduction of its fruits was harmless, or that any Fourth Amendment violation

that might have occurred had harmless results."  *Id.* at 56.

Further, to the extent that Wangler contends that the state courts reached an incorrect

result, whether the conclusion reached by the state courts regarding Wangler's Fourth

Amendment claim is correct or not does not control whether *Stone's* bar to federal habeas review

applies.  *Emerson v. Kelly*, 2015 WL 3968250, * 17 (N.D. Ohio June 30, 2015) (citing cases for

the proposition that a petitioner's belief that the state courts reached an incorrect result is not a

basis for providing habeas relief for a Fourth Amendment claim).

Based on the foregoing, Wangler has failed to demonstrate that the trial court's  motion to

suppress proceedings, direct appeal, including his App. R. 26(A) application for reconsideration,

and/or appeal to the Supreme Court of Ohio were sham proceedings or that he was denied the

opportunity to fully and fairly litigate his Fourth Amendment claim.  Accordingly, federal habeas

review of Wangler's first ground for relief is barred by *Stone*.

Wangler also contends that this Court should not apply *Stone* because *Stone* was decided

prior to the current version of § 2254, i.e., prior to the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA").  Doc. 9, pp. 26-31.   Courts, however, have rejected similar arguments

---

[15] In *Stone v. Powell*, the Supreme Court also heard a companion case, i.e., *Wolff v. Rice*, along with Lloyd Powell's case.  428 U.S. at 469-474.   In petitioner Rice's case, the state court had determined that the evidence was not unconstitutionally seized.  *Id.* at 472.

and have continued to apply *Stone* to Fourth Amendment claims post-ADEPA. *See Shepherd v. Warden, Pickaway Correctional Inst.*, 2011 WL 3664442, * 6 (S.D. Ohio May 31, 2011), *report and recommendation adopted*, 2011 WL 3652615 (S.D. Ohio Aug. 18, 2011) (rejecting petitioner's claim that Congress overrode *Stone* in enacting the AEDPA amendments); *Blevins v. Rogers*, 2010 WL 649097, * 2 (N.D. Ohio Feb. 19, 2010) ("The holdings of *Stone* and *Riley* are still valid under the revised habeas standards of AEDPA."); *Enyart v. Coleman*, 29 F.Supp.3d at1059, 1071 (N.D. Ohio July 11, 2014) (applying *Stone* to bar Fourth Amendment federal habeas claim); *see also Ray v. U.S.*, 721 F.3d 758, 762 (6th Cir. 2013)(applying *Stone* in the context of Fourth Amendment claim raised in a §2255 petition).[16] Wangler's additional contentions that this Court should not apply *Stone* because it was incorrectly decided and today's Supreme Court would not likely follow it are unpersuasive and speculative.

For the foregoing reasons, the undersigned recommends that the Court find Ground One barred by *Stone v. Powell* and **DISMISS** Ground One as not cognizable on federal habeas review.

### 2.  Ground Two

**Ground Two**: Petitioner, Mark A. Wangler, is being held in violation of his Constitutional Rights and United States Supreme Court case law in that the trial court failed in its *Daubert* gatekeeper role when it admitted scientific testimony offered by the State of Ohio that was not generally accepted and where there was an analytical gap between the accepted scientific premise and the conclusions of the State's expert at trial.

Doc. 1, pp. 18-19.

In Ground Two, Wangler contends that the state court improperly admitted expert testimony from James Schauer of the Lab relating to the State's theory that biomarkers from

---

[16] Wangler asserts that, because *Ray* was decided in the context of a §2255 petition as opposed to a §2254, *Ray* is not applicable to this case. Doc. 9, p. 29. However, when applying *Ray* in the context of a §2255 petition, the Sixth Circuit indicated, "We see no reasoned basis to distinguish between §2254 and §2255 when applying the Supreme Court's holding in *Stone*." *Ray*, 721 F.3d at 762.

engine exhaust could be found in the duct work of the Wangler's home.  Doc. 1, pp. 18-19, Doc. 9, pp. 31-41.  Wangler argues that the expert testimony was unreliable.  Doc. 1, pp. 18-19, Doc. 9, pp. 31-41.  The Third District Court of Appeals reviewed the trial court's allowance of the Lab's testing and Schauer's expert testimony under Ohio Evid. R. 702 and Ohio Evid. R. 403(A) and, following a lengthy analysis, found no error in its admission.  Doc. 8-1, pp. 522-539, ¶¶ 55-86.

Generally, a state court's ruling regarding the admissibility of evidence is not a cognizable federal habeas claim.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Bell v. Arn*, 536 F.2d 123, 125-126 (6th Cir. 1976).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 67-68.  Yet, "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Nonetheless, the "category of infractions that violate 'fundamental fairness'" has been defined very narrowly.  *Dowling v. U.S.*, 493 U.S. 342, 353 (1990); *Bugh,* 329 F.3d at 512.  Thus, a state court's evidentiary ruling generally will not constitute a due process violation unless it offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Bugh*, 329 F.3d at 512 (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).

Wangler argues that federal habeas relief is warranted because the admission of Schauer's expert testimony was so egregious that it denied him his right to a fundamentally fair trial.  Doc. 9, pp. 31-41.  He contends that the state court's admission of expert testimony

relating to the State's theory that biomarkers from engine exhaust could be found in the duct work of the Wanglers' home was highly prejudicial because it "was material and directly related to a 'critical highly significant factor' in the case," i.e., whether there was evidence that Wangler used vehicle exhaust to murder his wife, but did not meet the test for admissibility under state evidentiary rules.  Doc. 9, p. 33.   Wangler contends that this alleged error was magnified when the trial court excluded testimony from his expert Frederick A. Teeters ("Teeters") that burning candles were the source of soot and biomarkers in the Wangler's home.  Doc. 9, pp. 31, 42-43.  As indicated above, it is not the role of a federal habeas court to reexamine questions of state law, i.e., admissibility of expert evidence under state evidentiary rules.

Additionally, Wangler has not demonstrated that the admission of Schauer's testimony resulted in a denial of a fundamentally fair trial.  Wangler was permitted to cross-examine Schauer.  Further, while the trial court concluded that Teeters was not qualified to testify as an expert regarding candle soot in the house, the trial court did find Teeters qualified in the area of forensic chemical analysis and allowed Teeters to testify with respect to Schauer's and the Wisconsin Lab's testing.  Doc. 8-12, pp. 114, 120-137.  Moreover, as discussed more fully below with respect to Ground Three, the trial court did not exclude all evidence relating to the candle soot and the biomarkers produced from burning candles.  Doc. 8-10, pp. 128-185, Doc. 8-10, pp. 262-272, Doc. 8-11, pp. 4-12, Doc. 8-12, pp. 165-175.

Also, Wangler has not shown that there is clearly established Supreme Court precedent stating that a state violates due process by admitting expert testimony.  Thus, Wangler is unable to demonstrate that the admission of Schauer's testimony and testimony regarding the Lab's testing was contrary to or an unreasonable application of clearly established federal law or that it resulted in a denial of a fair trial.  *See e.g., Wilson v. Parker*, 515 F.3d 682, 705-706 (6th Cir.

2008) (finding that, since there was an absence of Supreme Court precedent demonstrating a constitutional violation based on use of hair-matching evidence, petitioner was unable to show that admission of expert testimony denied him a fair trial); *Jefferson v. Warren*, 2015 WL 1014900, * 9 (E.D. Mich. Mar. 9, 2015) ("A federal district court cannot grant habeas relief on admission of an expert witness' testimony in the absence of Supreme Court precedent showing that admission of that expert witness' testimony on a particular subject violates the federal constitution.") (relying on *Wilson v. Parker*, 515 F.3d at 705-706); *see also Bugh*, 329 F.3d at 512-513 (declining to find a state's evidentiary ruling so egregious that it resulted in a due process violation where there was no clearly established Supreme Court precedent holding that admission of prior bad acts evidence constituted a due process violation).

Based on the foregoing, Wangler has not shown that the state court's admission of Schauer's expert testimony and/or admission of Lab testing results was so egregious to rise to the level of a denial of fundamental fairness. Accordingly, the undersigned recommends that the Court **DENY** Ground Two.

### 3. Ground Three

**Ground Three**: Petitioner, Mark A. Wangler, is being held in violation of his Constitutional Rights and United States Supreme Court case law in that the trial court refused to permit his expert to testify and rebut the State's expert's theory.

Doc. 1, p. 19.

In Ground Three, Wangler contends that the state court improperly excluded testimony from his expert Teeters that burning candles were the source of soot and biomarkers in the Wanglers' home. Doc. 1, p. 19, Doc. 9, pp. 42-45.

As discussed above, it is not the province of a federal habeas court to reexamine state court determinations regarding issues of state law. *Estelle*, 502 U.S. at 67-68. Additionally, a

state court's evidentiary ruling generally will not constitute a due process violation unless it offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh*, 329 F.3d at 512.

Wangler claims that the trial court's ruling regarding Teeters prevented his ability to present a complete defense. Doc. 9, p. 43. While "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense . . . [i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 301 (1973). Thus, "[a] defendant 'does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Herrington v. Edwards*, 178 F.3d 1294, *2 (6th Cir. 1999) (Table) (A "defendant does not have the right to introduce everything in his defense. His evidence as well as the state's must be reliable.") (relying on *Turpin v. Kassulke*, 26 F.3d 1392 (6th Cir. 1994)).

The state court found that, under Ohio's evidentiary rules, Teeters was not qualified to offer expert testimony concerning candle soot. Doc. 8-12, p. 114. The Third District Court of Appeals reviewed the trial court's decision to prohibit Teeters from providing expert testimony regarding candle soot in the Wanglers' home. Doc. 8-1, pp. 539-543, ¶¶ 87-93. The court of appeals concluded that the trial court did not abuse its discretion when it precluded Teeters from testifying regarding candle soot, noting that Teeters had himself acknowledged a lack of experience working with candle soot and the knowledge he had regarding candle soot had been derived from articles found on the internet and at libraries. Doc. 8-1, pp. 540-541, ¶¶90- 91,

27

Doc. 8-12, p. 104. Further, based on other testimony presented by the defense, including testimony from one of Wangler's experts, Mr. Wabeke, who explained that, as a result of how most candles are made, one would expect to find similar molecular tracers in soot from a burning candle and soot from an engine, the state court of appeals concluded that the trial court's ruling with respect to Teeters did not prejudice Wangler. Doc. 8-1, pp. 542-543, ¶ 92; *see also* Doc. 8-10, pp. 262-272, Doc. 8-11, pp. 4-12. In addition to Mr. Wabeke's testimony, the trial court allowed admission of an analytical report prepared by Shrader Labs and testified to by Laura Stephens on behalf of the defense[17] regarding the candle testing requested by Mr. Wabeke.[18] Doc. 8-10, pp. 128-185, Doc. 8-12, pp. 165-175.

Based on the foregoing, Wangler has not shown that the state court's exclusion of Teeters' testimony regarding candle soot was so egregious or prejudicial to result in a denial of fundamental fairness. Accordingly, the undersigned recommends that the Court **DENY** Ground Three.

### 4. Ground Four

**Ground Four**: Petitioner, Mark A. Wangler, is being held in violation of his Constitutional Rights and United States Supreme Court case law in that he was denied a fair trial as a result of numerous discovery violations that denied him material evidence.

Doc. 1, pp. 19-20.

Although he raised it in his Petition, Wangler concedes in his Traverse that Ground Four, wherein he asserts he was denied a fair trial as a result of numerous discovery violations that resulted in a denial of material evidence, is procedurally defaulted because he did not raise the

---

[17] Initially the trial court did not allow the Shrader Lab analytical report (Doc. 8-12, p. 170) but, upon further consideration, the trial court admitted that report (Doc. 8-12, p. 175).

[18] Ms. Stephen's testimony also addressed an audit she performed regarding the Wisconsin Lab. Doc. 8-10, pp. 128-185.

issue before the Supreme Court of Ohio.  Doc. 9, p. 46.  Accordingly, the undersigned

recommends that the Court **DENY** Ground Four as procedurally defaulted.

### 5.  Ground Five

**Ground Five**: Petitioner, Mark A. Wangler, is being held in violation of his
Constitutional Rights and United States Supreme Court case law in that he was
denied effective assistance of counsel both at the trial and appellate levels.

Doc. 1, pp. 20-22.

In Ground Five, Wangler raises numerous alleged instances of ineffective assistance of

trial and/or appellate counsel.  Doc. 1, pp. 20-22, Doc. 9, pp. 51-71.   Trial counsel Christopher

R. McDowell also represented Wangler in his appeal.  Doc. 1, p. 23 (listing Wangler's counsel

throughout his state court proceedings).   Wangler's allegations are summarized below:

1. Appellate counsel was ineffective for failing to raise ineffective assistance of trial
   counsel with respect to the handling of suppression issues regarding the April and
   November searches and for failing to preserve the record on appeal (Doc. 1, p. 20;
   Doc. 9, pp. 51-58));

2. Appellate counsel was ineffective for failing to raise trial court error with respect
   to the admission of testimony from a State's witness regarding CPR techniques
   (Doc. 1, p. 22; Doc. 9, p. 59);

3. Trial counsel and appellate counsel were ineffective for failing to argue that
   Wangler's journals were protected by a privilege under O.R.C. § 2317.02 because
   the journals were kept by Wangler in the course of counseling by his cleric (Doc.
   1, p. 22; Doc. 9, p. 59);

4. Trial counsel and appellate counsel were ineffective for failing to argue that
   statements made by Wangler to Dr. Rina Stein were protected by a privilege
   under O.R.C. § 2317.02 because the statements were made for purposes of
   medical treatment for carbon monoxide poisoning at the hospital the night his
   wife died (Doc. 1, p. 22; Doc. 9, pp. 59-60);

5. Trial counsel and appellate counsel were ineffective for failing to object or raise
   Doyle-like errors in the proceedings because the prosecution commented on
   Wangler's lack of cooperation and a police detective commented on Wangler's
   lack of consent to testing in the home (Doc. 1, p. 22; Doc. 9, pp. 60-63);

6.  Appellate counsel was ineffective for not arguing that trial counsel was ineffective for not seeking to suppress statements made by Wangler to Chief Kitchen when those statements were not provided to Wangler by the State in discovery (Doc. 1, p. 22; Doc. 9, p. 63); and

7.  Trial and appellate counsel were ineffective for failing to raise as an assignment of error the fact that Wangler's sentence was statutorily incorrect because Wangler was not alleged to have committed his conduct with any aggravating circumstances under Ohio law (Doc. 1, p. 22; Doc. 9, pp. 63-70).

### 1.  Alleged ineffective assistance of trial counsel

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").

"Ohio's doctrine of *res judicata* . . . provides in relevant part that a final judgment of conviction bars a convicted defendant from raising in any proceeding, except an appeal from that judgment, any issue that was raised, or could have been raised, at trial or on appeal from that judgment."  *William v. Bagley,* 380 F.3d 932, 967 (citing *State v. Perry*, 10 Ohio St.2d 175 (1967)).  However, "since counsel cannot realistically be expected to argue his own incompetence" Ohio courts have found that *res judicata* will not serve "to bar a defendant represented by the same counsel at trial and upon direct appeal from raising a claim of ineffective assistance of counsel in a petition for postconviction relief."  *State v. Lentz*, 70 Ohio

St.3d 527, 785 (1994) (discussing and quoting *State v. Cole*, 2 Ohio St.3d 112 (1982))(internal quotations omitted).

Wangler was represented in his direct appeal by counsel who represented him at trial such that assertion of ineffective assistance of trial counsel would not have been realistic. However, he had an opportunity to present his ineffective assistance of trial counsel claims through a post-conviction petition but failed to do so. *See Lentz, supra*. Pursuant to O.R.C. § 2953.21(A)(2), a post-conviction petition is due no later than 365 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal.[19] O.R.C. § 2953.21(A)(2)(eff. 3-23-15). A court may consider a petition filed after the expiration of the time for filing a post-conviction petition provided that certain conditions are met, including a showing that the "petitioner was unavoidably prevented from discovery of facts upon which the petitioner must rely to present the claim for relief . . ." O.R.C. § 2953.23(A)(1)(a).

Here, Wangler's time for filing a petition for post-conviction relief pursuant to O.R.C. § 2953.21 expired 180 days after the filing of the transcript with the state court of appeals, i.e., on February 13, 2012.[20] Additionally, Wangler filed his App. R. 26(B) application for reopening his appeal on January 18, 2013, and it included facts upon which he bases his claims of alleged ineffective assistance of trial and appellate counsel. Doc. 8-1, p. 746. Thus, since Wangler had discovered facts relating to his claims of alleged ineffective assistance of counsel as far back as 2013, an attempt now to raise those claims in an untimely post-conviction petition would likely

---

[19] The transcript was transmitted to the court of appeals on August 17, 2011. *See* Allen County Common Pleas Court Docket – Case No. CR 2009 0298 – http://courtvweb.allencountyohio.com/eservices/?x=VvsJpQsxGqY8S9y42*KU29HCzA0-9aKAUtmSAngVmisVxkwhwQKB*nITDrzz1E5rm15PitTzT6GhBuk-rnIw3Q

[20] O.R.C. § 2953.21(A)(2) was amended on March 23, 2015. The prior version provided for filing of a post-conviction petition within 180 days after the date on which the trial transcript was filed in the court of appeals in the direct appeal. Even if the current version of O.R.C. § 2953.21(A)(2), allowing for 365 days, applied, Wangler's deadline for filing the petition expired on August 16, 2012.

be precluded under O.R.C. § 2923.23.[21]  *See e.g., Biggers v. Warden*, 2007 WL 1831106, *3-4 (S.D. Ohio June 25, 2007) (finding that a petitioner could have but failed to pursue his claims of ineffective assistance of trial counsel in a petition for post-conviction relief because he was represented by the same counsel on appeal and at trial).

Wangler contends that he should be excused from failing to present his claims in a petition for post-conviction relief because, "if appellate counsel could not possibly spot his own mistakes in the appeal, he is equally likely to miss the issue for purposes of advising post-conviction relief, especially if the evidence of ineffectiveness of counsel is completely within the record." Doc. 9, p. 50.  However, this contention by Wangler is belied by the fact that trial counsel, i.e., Christopher R. McDowell, continued representing Wangler after his appeal and, in connection with that representation, spotted and raised both his ineffective assistance at trial as well as his ineffective assistance during the appeal.  Doc. 8-1, p. 746 (App. R. 26(B) application); Doc. 1 (Habeas Petition).

Wangler also contends that *Lentz* allows for but does not require that claims of ineffective assistance of trial counsel be raised in a post-conviction petition where appellate counsel is the same as trial counsel and that there are other remedies available for asserting claims of ineffective assistance of trial counsel, including an application to reopen appeal.  Doc. 9, p. 49. Contrary to Wangler's suggestion, an App. R. 26(B) application is not an available remedy for asserting claims of ineffective assistance of *trial* counsel.[22]  Rather, an App. R. 26(B) application

---

[21] Wangler has not requested a stay to return to state court to raise his ineffective assistance of trial counsel claims in a petition for post-conviction relief.  Nor does it appear that granting a stay would be warranted because it does not appear that Wangler could demonstrate good cause for failing to exhaust his state remedies.  *See e.g. Biggers*, 2007 WL 1831106, * 4, n. 1 (discussing requirements for a stay under *Rhines v. Weber*, 544 U.S. 269, 277-278 (2005), and unlikelihood that the petitioner could satisfy those requirements).

[22] Wangler argues that "in *State v. Hutton*, 797 N.E.2d 948, 100 Ohio St.3d 176, 2003-Ohio-5607 (2003), the Ohio Supreme Court found no res judicata bar to raising the issue of ineffectiveness of *trial* counsel in a motion to reopen the appeal when appellate counsel was also trial counsel." Doc. 9, p. 49 (emphasis supplied).  In *Hutton*, however,

is used to raise claims of ineffective assistance of *appellate* counsel. *See* App. R. 26(B) ("A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of *appellate* counsel.") (emphasis supplied). Thus, while Wangler filed an application to reopen his appeal pursuant to App. R. 26(B), that application preserved Wangler's ineffective assistance of *appellate* counsel claims but not the underlying ineffective assistance of trial counsel claims. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[A] Rule 26(B) application 'based on ineffective assistance cannot function to preserve' the underlying substantive claim" for federal habeas review.) (citing *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *see also*, *Glenn v. Bobby*, 2013 WL 3421888, * 10 (N.D. Ohio July 8, 2013) ("When an appellant claims that appellate counsel was ineffective because he failed to raise certain claims, that does not fairly present the underlying substantive claims that appellate counsel failed to raise to the state courts.").

Since Wangler did not fairly present his ineffective assistance of trial counsel claims to the state courts in either his direct appeal or in a petition for post-conviction relief, federal habeas review is not available for those claims and the Court should **DIMISS** Wangler's claims of ineffective assistance of trial counsel contained in Ground Five.[23]

## 2. Alleged ineffective assistance of appellate counsel

---

the Supreme Court of Ohio held "that the doctrine of res judicata does not apply to bar a claim of ineffective assistance of *appellate* counsel not previously raised on appeal where a defendant was represented on appeal by the same attorney who allegedly earlier provided the ineffective assistance, even where the defendant was also represented on that appeal by another attorney who had not represented the defendant at the time of the alleged ineffective assistance." 100 Ohio St.3d at 183 (emphasis supplied). As indicated, *Hutton* pertains to claims of ineffective assistance of appellate counsel. Thus, Wangler's reliance upon *Hutton* to argue that he preserved his ineffective assistance of trial counsel claims by filing an App. R. 26(B) application to reopen is misplaced.

[23] Although the stand alone ineffective assistance of trial counsel claims should be dismissed as not having been fairly presented to the state courts, as discussed below, the ineffective assistance of appellate counsel claims premised on ineffective assistance of trial counsel involve a review of the underlying ineffective assistance of trial counsel claims. *See Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011).

Unlike Wangler's claims of ineffective assistance of trial counsel, Wangler fairly presented his claims of ineffective assistance of appellate counsel to the state courts in his App. R. 26(B) application (Doc. 8-1, pp. 746-759) and his appeal to the Supreme Court of Ohio from the Third District Court of Appeals' denial of Wangler's application to reopen (Doc. 8-1, pp. 772-793).

### a. *Strickland v. Washington* standard of review and AEDPA deference

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a Sixth Amendment right not just to counsel but to "reasonably effective assistance" of counsel. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged from the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). The right to effective assistance of counsel extends to the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1984). *Strickland v. Washington*, 466 U.S. 668 (1984), establishes the standard for assessing claims of ineffective assistance of counsel, including those relating to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (finding that *Strickland* provided the proper standard for addressing whether appellate counsel was ineffective for failing to file a merits brief). Appellate counsel is not obligated to advance every possible argument on appeal. *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983); *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004). "The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-752)(internal quotations omitted).

Under the *Strickland* standard, to establish that his attorney was constitutionally ineffective, Wangler must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id*. at 688.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689.  Thus, judicial scrutiny of counsel's performance under *Strickland* is highly deferential because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable" and, in order to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*  As recently restated by the Supreme Court, in order to combat the "natural tendency" to speculate as to whether another strategy may have been more successful, the reasonableness of counsel's challenged performance is to be judged as of the time of counsel's performance.  *Maryland, v. Kulbicki*, --- S.Ct. ---, 2015 WL 5774453, *2 (2015) (per curiam) (relying on *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) and *Strickland*, 446 U.S. at 690).

To satisfy the second, "prejudice," prong of the *Strickland* test, a petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the outcome of the trial would have been different. *Id.* at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990) (quoting *Strickland,* 466 U.S. at 691).

When a state court reaches the merits of an ineffective-assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. This is so, even where a state court's opinion lacks detailed analysis or explanation. In *Harrington*, the Supreme Court held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" 562 U.S. at 100. Also, in *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions

were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington,* 131 S.Ct. 770, 786-788).

### b.  State court's adjudication of Wangler's claims of ineffective assistance of appellate counsel

Respondent argues that Wangler's ineffective assistance of appellate counsel claims in Ground Five are without merit and Wangler is unable to demonstrate that the state court of appeals' App. R. 26(B) decision was contrary to or an unreasonable application of clearly established federal law.  Doc. 8, pp. 48-54.

As reflected in its March 12, 2013, decision, the state court of appeals considered Wangler's claims of ineffective assistance of appellate counsel, stating:

> This cause comes before the Court on Appellant's application for reopening of his direct appeal pursuant to App. R. 26(B), and Appellee's memorandum in opposition to the application.

> Upon consideration the Court finds that the additional issues raised in Appellant's application fail to show any genuine issue as to whether he was deprived of the effective assistance of counsel on appeal.  App.R. 26(B)(5).  See *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, applying the analysis of *Strickland v. Washington*, 466 U.S. 668 (1984).  See, also, *State v. Bradley*, 42 Ohio St.3d 136 (1989). Accordingly, the application is not well taken.

> It is therefore **ORDERED** that Appellant's application for reopening of his direct appeal be, and the same hereby is, **DENIED** at the costs of the Appellant for which judgment is hereby rendered.

Doc. 8-1, pp. 770-771.

The state court of appeals' decision makes clear that, when adjudicating Wangler's claims of ineffective assistance of appellate counsel, it correctly applied *Strickland*.  Since the state court of appeals adjudicated Wangler's claims on the merits, this Court assesses the state court of appeals' determination under *Strickland* and in light of the deference afforded state court

adjudications under § 2254(d).[24]  As such, this "habeas court must determine what arguments or theories support or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington*, 562 U.S. at 786.

To the extent that Wangler suggests that he is entitled to federal habeas relief by virtue of the fact that appellate counsel was the same as trial counsel, he has presented no authority for such a proposition.   Wangler must demonstrate that the state court's determination that appellate counsel was not constitutionally ineffective under *Strickland* was an unreasonable application of or contrary to clearly established federal law.

> **i.  Wangler's claim that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel with respect to the handling of suppression issues regarding the April and November searches and for failing to preserve the record on appeal (Doc. 1, p. 20; Doc. 9, pp. 51-58))**

Wangler contends that his appellate counsel was constitutionally ineffective for not raising ineffective assistance of trial counsel with respect to trial counsel's handling of suppression issues pertaining to both the April and November search warrants and for failing to preserve the record on appeal.  Doc. 1, p. 20; Doc. 9, pp. 51-58.  *Strickland* is the appropriate standard for reviewing claims relating to counsel's performance with respect to motions to suppress.  *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (indicating that, "the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel" and analysis under *Strickland* is proper); *see also Robins v. Fortner*, 698 F.3d 317, 333 (6th Cir. 2012) (a claim that counsel's performance was constitutionally ineffective with respect to a motion to

---

[24] Contrary to Wangler's suggestion (Doc. 9, pp. 70-71), the fact that the state court of appeals' March 12, 2013, decision denying his App. R. 26(B) application does not include detailed reasons does not mean that the deference afforded state court adjudications on the merits under § 2254(d) does not apply.  *See Harrington*, 562 U.S. at 100 (holding that, "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").

suppress is analyzed under the two prongs of *Strickland*.).  In order to evaluate Wangler's claim of ineffective assistance of appellate counsel, this Court must assess the strength of the claim that counsel failed to raise.  *Henness*,  644 F.3d at 317.  Further, where the primary allegation of ineffectiveness of counsel is counsel's failure to litigate a Fourth Amendment claim competently, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  *Kimmelman*, 477 U.S. at 375.

   *April search*

   Wangler's trial counsel and appellate counsel challenged the April warrant and the trial court's denial of Wangler's suppression motion.  Doc. 8-1, pp. 17-27, 39-66, 341-352.  Wangler contends, however, that appellate counsel erred in not raising ineffective assistance of trial counsel regarding the April search warrant because the state court of appeals concluded that Wangler had waived his claims that the April affidavit contained stale information and that the April warrant did not describe with particularity the items to be seized.  Doc. 1, p. 20; Doc. 9, pp. 51-52.  Wangler submits that the issues were meritorious but, since trial counsel failed to request suppression on these grounds, the state court of appeals found a waiver.  Doc. 1, p. 20; Doc. 9, pp. 51-52; Doc. 8-1, p. 504.

   With respect to the claims that the state court of appeals determined were not waived, the state court of appeals found that certain items seized as part of the April search, including Wangler's handwritten journals, were outside the scope of the April search warrant and should have been suppressed, but concluded that the trial court's error was harmless beyond a reasonable doubt.  Doc. 8-1, pp. 507-522.

A lack of success does not mean that counsel did not competently present a motion to suppress.  *See Alexander v. Eberlin*, 2007 WL 2840401, * 6 (N.D. Ohio Sept. 27, 2007).  Moreover, Wangler has not demonstrated that trial counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case such that appellate counsel can be said to be constitutionally ineffective for not raising trial counsel's performance with respect to the April search warrant.   Contrary to the Supreme Court's cautionary instructions that every effort should be made to eliminate the distorting effects of hindsight, Wangler, instead of evaluating appellate counsel's performance at the time of the filing of the direct appeal, seeks the benefit of hindsight following the state court of appeals' March 22, 2012, decision, to suggest that a claim of ineffective assistance of trial counsel with respect to the issues of staleness and lack of particularity would have been a stronger argument than those actually raised by his appellate counsel on appeal.  *See Smith*, 477 U.S. at 536 ("The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting *Jones*, 463 U.S. at 751-752)(internal quotations omitted)).

Moreover, in view of the state appellate court's finding of harmlessness with respect to the fruits of the April search, even if Wangler were able to demonstrate that his appellate counsel's performance fell below an objective standard of reasonableness, he has not demonstrated that a "reasonable probability" exists that the outcome would have been different had his appellate counsel raised a claim of ineffective assistance of trial counsel for failure to preserve the issues of stale information and/or lack of particularity with respect to the April affidavit/warrant.  In fact, Wangler appears to concede that, with respect to the April warrant, the state court of appeals' harmless error determination precludes a finding of prejudice.  *See* Doc. 9,

p. 54 (noting that, "While Respondent may be correct as to Dr. Wangler's technical claims pertaining to ineffectiveness of appellate counsel and the April search . . .").   Moreover, Wangler has not demonstrated that the state court's App. R. 26(B) determination with respect to the April search was an unreasonable application of or contrary to clearly established federal law.

*November search*

Wangler's trial counsel and appellate counsel challenged the November warrants and the trial court's denial of Wangler's suppression motion.  Doc. 8-1, pp. 28-34, 39-66, 341-352.

First, Wangler contends that appellate counsel erred in not preserving the record for appeal and contends that, had the record been properly preserved, the complete record would demonstrate that issues had not been waived.  Doc. 1, p. 20; Doc. 9, pp. 51-52.  Wangler does not clearly specify in his Petition or Traverse what portion of the record appellate counsel did not properly preserve for appeal.  To the extent that Wangler contends that his appellate counsel should have included in the record the information set forth in Attorney McDowell's affidavit attached to Wangler's App. R. 26(B) application (Doc. 8-1, pp. 758-759), that information is evidence outside the record and Wangler has failed to argue how his appellate counsel's performance was objectively unreasonable for not including evidence outside the record in his direct appeal.  Accordingly, Wangler has not demonstrated that his appellate counsel was constitutionally ineffective under *Strickland* with respect to preserving the record for appeal.

Wangler also contends that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to raise the issue of staleness with respect to the November affidavit; for failing to precisely argue the nature of the alleged falsehoods in the November affidavit; and for failing to argue that law enforcement exceeded the scope of the November

search warrant.  Doc. 1, p. 20; Doc. 9, pp. 51-54.   Trial counsel challenged the November search warrant (Doc. 8-1, pp. 28-34, 39-66) and Wangler has not demonstrated that trial counsel's performance fell below an objective standard of reasonableness when he sought to suppress the evidence obtained as a result of the November search warrant.  *See Alexander*, 2007 WL 2840401, * 6 (indicating that a lack of success does not mean that counsel did not competently present a motion to suppress).

Additionally, appellate counsel challenged the trial court's denial of the motion to suppress with respect to the November search (Doc. 8-1, pp.  341-352) and Wangler has not shown that appellate counsel's failure also to raise ineffective assistance of trial counsel with respect to the November search was objectively unreasonable.  While, with the benefit of hindsight, Wangler may contend that ineffective assistance of trial counsel should have been raised, appellate counsel's performance is viewed as of the time of counsel's performance. When viewed from the proper vantage point, i.e., the time of the filing of the direct appeal, as opposed to after the state court of appeals denied Wangler's assignments of error with respect to the motions to suppress, Wangler has not demonstrated that appellate counsel's performance fell below an objective standard of reasonableness.

Further, even if Wangler were able to demonstrate that his appellate counsel's performance fell below an objective standard of reasonableness for failing to raise ineffective assistance of trial counsel with respect to the November search warrant, Wangler "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  *Kimmelman*, 477 U.S. at 375.  Wangler contends that, had the fruits of the November search, i.e., ductwork, register, and swatch of carpet, been excluded, the State's entire

42

case would have collapsed because the State would have had no evidence for scientific analysis. Doc. 9, p. 54. However, Wangler only states in a conclusory manner that his Fourth Amendment claims would have been found to be meritorious if the state court of appeals had not found them waived on appeal. Doc. 9, p. 52. The trial court concluded that Wangler's Fourth Amendment claims, including claims deemed waived by the state court of appeals, were not meritorious[25] and Wangler has failed to prove or articulate a basis for concluding that his Fourth Amendment claim would have been found meritorious.

Based on the foregoing, Wangler has failed to demonstrate that the state court's App. R. 26(B) determination with respect to the November search was an unreasonable application of or contrary to clearly established federal law.

> **ii. Wangler's claim that appellate counsel was ineffective for failing to raise trial court error with respect to the admission of testimony from a State's witness regarding CPR techniques (Doc. 1, p. 22; Doc. 9, p. 59)**

Wangler contends that appellate counsel should have argued on appeal that the state trial court improperly allowed expert testimony from witness Brenda Keller regarding CPR techniques.[26] Doc. 1, p. 22; Doc. 9, p. 59. The Respondent argues that Brenda Keller was a physician's assistant[27] and that the trial court determined that she was qualified to testify regarding basic CPR techniques. Doc. 8, p. 49. Respondent also contends that many laypersons have knowledge regarding basic CPR techniques and Wangler has not shown that the issue he

---

[25] With respect to the scope of the November warrant, the trial court concluded that the "carpet from vent cover" was properly seized because it was so closely related to items listed in the November search warrant, namely, "duct work." Doc. 8-1, p. 82. Additionally, the trial court concluded that, even if the Affidavits submitted in support of the warrants did not contain sufficient probable cause or items were seized outside the scope of the warrants, the searches should be upheld pursuant to the "good faith exception" to the exclusionary rule. Doc. 8-1, p. 83.

[26] Chief Kitchen also testified regarding CPR techniques. Doc. 8-5, p. 253.

[27] Ms. Keller testified that she was a certified nurse practitioner. Doc. 8-5, pp. 131-132.

claims should have been raised was clearly stronger than other issues raised on appeal.  Doc. 8, pp. 49-50.  Over objections from trial counsel, the trial court permitted Ms. Keller to testify regarding life saving techniques that she was trained in and that were part of her every day work. Doc. 8-5, pp. 135, 136-137, 138, 139-140.

Wangler summarily contends that Ms. Keller's testimony was not admissible and, thus, asserts that his appellate counsel was constitutionally ineffective for failing to raise the issue on appeal.  Wangler provides no analysis under *Strickland*; he does not contend that this argument was stronger than other issues presented on appeal; and he does not argue how the state court of appeals' denial of his App. R. 26(B) application was contrary to or an unreasonable application of clearly established federal law.  Accordingly, any such arguments are waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." ) (internal citations omitted).

### iii. Wangler's claim that appellate counsel was ineffective for failing to argue that Wangler's journals were protected by a privilege under O.R.C. § 2317.02 because the journals were kept by Wangler in the course of counseling by his cleric (Doc. 1, p. 22; Doc. 9, p. 59)

In his Petition, Wangler argues that trial counsel and appellate counsel should have challenged the admission of Wangler's journals on the basis of a clerical privilege under O.R.C. § 2317.02.  Doc. 1, p. 22.  Respondent argues that any claim that the journals were subject to a clerical privilege under O.R.C. § 2317.02 is without merit.  Doc. 8, p. 50.  In his Traverse, Wangler states that he "concedes he should fail" with respect to this claim, "not for the reasons set forth by Respondent" but because "any use of the journals has already been established as

improper for another reason -- suppression issue" and asserts that the issue is therefore redundant.  Doc. 9, p. 59.

As set forth above, Wangler should be denied federal habeas relief based on his suppression arguments.   Further, since Wangler concedes that the clerical privilege issue should fail; provides no analysis under *Strickland*; does not contend that this argument was stronger than other issues presented on appeal; and does not argue how the state court of appeals' denial of his App. R. 26(B) application was contrary to or an unreasonable application of clearly established federal law, any argument that there was ineffective assistance of counsel for failing to raise a clerical privilege with respect to the journals should be deemed waived. *See McPherson*, 125 F.3d at 995–996.

Moreover, even if not waived, Wangler would be unable to establish ineffective assistance of counsel.  As provided in O.R.C. § 2317.02(C), absent a waiver, a cleric may not testify regarding "confession[s] made, or any information confidentially communicated, to the cleric for religious purpose in the cleric's professional character."  O.R.C. § 2317.02(C)(1). Since the privilege precludes testimony *from a cleric* and the journals do not constitute testimony from a cleric, O.R.C. § 2317.02(C)(1) would not apply.  Thus, Wangler is unable to demonstrate that appellate counsel would have been successful if the issue had been raised and cannot demonstrate that the state court of appeals' App. R. 26(B) determination was an unreasonable application of or contrary to clearly established federal law.

> **iv. Wangler's claim that appellate counsel was ineffective for failing to argue that statements made by Wangler to Dr. Rina Stein were protected by a privilege under O.R.C. § 2317.02 because the statements were made for purposes of medical treatment for carbon monoxide poisoning at the hospital the night his wife died (Doc. 1, p. 22; Doc. 9, pp. 59-60)**

Wangler contends that statements made by him to Dr. Rina Stein ("Stein") were privileged under O.R.C. § 2317.02 because they were made in the course of medical treatment and thus appellate counsel was ineffective for failing to challenge the admission of Stein's statements.[28]  Doc. 1, p. 22; Doc. 9, pp. 59-60.   Respondent asserts that counsel was not ineffective because the statements were not made in the course of medical treatment but rather were made in connection with Stein advising Wangler that his wife had died.  Doc. 8, pp. 50-52. Respondent also contends that Wangler's statement to Stein that he heard his wife talking was cumulative of other evidence establishing that Wangler claimed that his wife was still alive when he called 9-1-1.[29]  Doc. 8, pp. 50-52.  In his Traverse, Wangler challenges Respondent's claim that Wangler's statements to Stein were not made for medical treatment, arguing that the record demonstrates that, at some point during Stein's conversation with Wangler, the situation changed from "not evaluating to evaluating."  Doc. 9, pp. 59-60.

Statements Wangler made to Stein, which Wangler alleges were improperly admitted were contained in Kathy Wangler's medical records, not Wangler's (Doc. 8-6, pp. 68-71), and Wangler has not explained how statements included in Kathy Wangler's medical treatment notes would be construed as statements made by Wangler for purposes of his medical treatment.  Thus, Wangler has not demonstrated that appellate counsel acted objectively unreasonably by not raising a challenge to the admission of the statements based on a claim of privilege.

Further, Wangler does not challenge Respondent's contention that Stein's notes, which show that Wangler relayed information regarding his wife indicating that his wife was alive when he initially found her, were cumulative of other evidence.  Thus, even if Wangler could

---

[28] The statements that Wangler contends were improperly admitted were contained in Stein's notes and/or testified to by her. Stein's testimony is located in Doc. 8-6, pp. 40-104.

[29] Respondent points to a 9-1-1 tape in which Wangler told a dispatcher that his wife was having a seizure.  Doc. 8, p. 52.  Sergeant Sherrick also testified that Wangler had told him that when he first found his wife, he thought she was having a seizure.  Doc. 8-6, p. 226.

demonstrate that appellate counsel's performance was objectively unreasonable by virtue of his failing to raise a challenge to the admission of Wangler's statements to Dr. Stein on the basis of privilege under O.R.C. § 2713.02, he has failed to argue or demonstrate prejudice under *Strickland* and has not demonstrated that the state court of appeals' App. R. 26(B) determination was an unreasonable application of or contrary to clearly established federal law.

> **v.**  **Wangler's claim that appellate counsel was ineffective for failing to object or raise Doyle-like errors in the proceedings because the prosecution commented on Wangler's lack of cooperation and a police detective commented on Wangler's lack of consent to testing in the home (Doc. 1, p. 22; Doc. 9, pp. 60-63)**

Wangler argues that the prosecutor's comment and a police detective's comment regarding Wangler's lack of cooperation violated his constitutional rights because, "Where an accused asserts his constitutional right to remain silent, his silence may not be used against him to prove his guilt."  Doc. 9, p. 61 (relying on *Doyle v. Ohio*, 426 U.S. 610 (1976)).  In his Petition, Wangler contends that counsel erred in not objecting during trial to the comments because they constituted *Doyle*-like violations.  Doc. 9, p. 61 (relying on *Doyle v. Ohio*, 426 U.S. 610 (1976)).  *Doyle* dealt with a prosecutor's use at trial of a defendant's silence after *Miranda* warnings were provided to impeach the defendant's testimony at trial. 426 U.S. 610.

Wangler's claim of ineffective assistance for failing to object to alleged *Doyle*-like violations is presented in his Petition as a claim of ineffective assistance of trial counsel for failing to object, rather than a claim of ineffective assistance of appellate counsel.  Doc. 1, p. 22. As discussed above, Wangler's ineffective assistance of trial counsel claims are not before this Court as stand-alone habeas claims because claims of alleged ineffective assistance of trial counsel were not fairly presented to the state courts for review.   Even if a stand alone claim of ineffective assistance of trial counsel were deemed to be properly before this Court, the transcript

reflects that, with respect to the alleged instance of improper comment by the prosecutor during Sergeant Sherrick's testimony, trial counsel did object and his objection was overruled. Doc. 8-6, pp. 260-261. Additionally, the prosecutor's question was posed to Sergeant Sherrick on re-direct in response to defense counsel's question on cross-examination regarding Wangler's cooperation with Sergeant Sherrick. Doc. 8-6, 245-247, 260-261. Also, contrary to Wangler's assertion, trial counsel raised an objection during Clyde Breitigan's testimony regarding consent required for testing and the objection was overruled. Doc. 8-9, pp. 206-207.

In his Traverse, Wangler adds that his appellate counsel was ineffective for not raising *Doyle*-like errors on appeal regarding allegedly improper comments made by the prosecution and a detective regarding a lack of cooperation by Wangler with respect to the investigation. Doc. 1, p. 22; Doc. 9, pp. 60-63. However, since that claim was first presented in his Traverse rather than his Petition, the Court need not address the claim. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Even if the Court were to consider the claim, Wangler has failed to demonstrate that the alleged *Doyle*-like errors were stronger arguments on appeal than those raised by appellate counsel. Wangler has not demonstrated that appellate counsel's failure to challenge the two limited instances of alleged improper comments regarding lack of cooperation rendered the result of the trial unreliable or the proceedings fundamentally unfair. Additionally, Wangler did not testify in this case (Doc. 8-12, pp. 138-139). Thus, *Doyle* is distinguishable as there was no attempt to impeach his testimony through his assertion of his right to remain silent. Wangler's own description of the alleged errors as *Doyle*-like suggests an acknowledgement that the alleged errors are not directly on all fours with *Doyle*. Accordingly, since *Doyle* is not on all fours with Wangler's case, Wangler cannot demonstrate appellate counsel's failure to raise a *Doyle* argument on appeal was objectively unreasonable nor can he demonstrate that the state court of

48

appeals' App. R. 26(B) determination was an unreasonable application of or contrary to clearly established federal law.

> **vi. Wangler's claim that appellate counsel was ineffective for not arguing that trial counsel was ineffective for not seeking to suppress statements made by Wangler to Chief Kitchen when those statements were not provided to Wangler by the State in discovery (Doc. 1, p. 22; Doc. 9, p. 63)**

Wangler's claim that appellate counsel was ineffective for not arguing that trial counsel was ineffective for not seeking to suppress statements Wangler made to Chief Kitchen is presented in a perfunctory manner. Wangler provides no analysis of legal authority and no basis upon which this Court can conclude that appellate counsel's failure to raise an issue regarding statements made by Wangler to Chief Kitchen constituted constitutionally ineffective assistance of counsel. Nor does Wangler describe the statements at issue or argue how appellate counsel's performance with respect to statements made to Chief Kitchen rendered the result of the trial unreliable or the proceedings fundamentally unfair. *See McPherson*, 125 F.3d at 995–996 ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." ) (internal citations omitted). Accordingly, Wangler has failed to demonstrate that state court of appeals' App. R. 26(B) determination regarding his alleged claim of ineffective assistance of appellate counsel regarding statements made by Wangler to Chief Kitchen was an unreasonable application of or contrary to clearly established federal law.

> **vii. Wangler's claim that appellate counsel was ineffective for failing to raise as an assignment of error the fact that Wangler's sentence was statutorily incorrect because Wangler was not alleged to have committed his conduct with any aggravating circumstances under Ohio law (Doc. 1, p. 22; Doc. 9, pp. 63-70)**

Wangler claims that his appellate counsel was ineffective for not challenging his sentence.  Doc. 1, p. 22; Doc. 9, pp. 63-70.  He contends that appellate counsel should have argued that the trial court improperly sentenced him to life imprisonment with parole eligibility after 25 years.  Doc. 1, p. 22; Doc. 9, pp. 63-70.  Wangler asserts that the sentence imposed should have been life imprisonment with parole eligibility after 20 years.  Doc. 1, p. 22; Doc. 9, pp. 63-70.

Wangler was indicted for and convicted of Aggravated Murder in violation of O.R.C. § 2903.01(A).  Doc. 8-1, pp. 5-6.  The Ohio Revised Code provides, "Whoever is convicted of . . . aggravated murder in violation of section 2903.01 of the Revised Code shall suffer death or be imprisoned for life, as determined pursuant to sections 2929.022, 2929.03, and 2929.04 of the Revised Code . . ."  O.R.C. § 2929.02(A).

Wangler acknowledges that, prior to his sentencing, O.R.C. § 2929.03 was amended to allow a trial court discretion to impose a life sentence, without parole; a life sentence, with parole eligibility after 20 years; a life sentence, with parole eligibility after 25 years, or a life sentence, with parole eligibility after 30 years, for an individual convicted of aggravated murder with no aggravating circumstances.  Doc. 9, pp. 64-65.  He nonetheless contends that, because O.R.C. § 2929.022(B),[30] provides for a life sentence, with parole eligibility after 20 years (Doc. 9, pp. 65-69) in instances where a specification of the aggravating circumstance of a prior conviction listed in O.R.C. § 2929.04(A)(5) is included in the indictment charging aggravated murder, but that aggravating circumstance and no other aggravating circumstances are proven, his appellate counsel should have raised an assignment of error with respect to the trial court's imposition of a

---

[30] O.R.C. § 2929.022, is an election of trial procedures statute, whereby a defendant charged with aggravated murder in an indictment containing a specification of the aggravating circumstance of a prior conviction listed in O.R.C. § 2929.04(5) may elect to have the existence of that aggravating circumstances determined at a sentencing hearing. O.R.C. § 2929.022(A)(1).

life sentence, with parole eligibility after 25 years.  Doc. 9, pp. 65-69.   He contends that, when O.R.C. § 2929.03 and O.R.C. § 2929.022 are read together, the trial court should have sentenced him to a life sentence, with parole eligibility after only 20, not 25, years.  Doc. 9, pp. 68- 69. Otherwise, Wangler contends that there is a violation of due process and equal protection because O.R.C. § 2929.03 and O.R.C. § 2929.022 provide for different sentencing ranges for the same offense.  Doc. 9, p. 68.

Wangler's indictment did not include aggravating circumstances (Doc. 8-1, pp. 5-6) and, as acknowledged by Wangler, O.R.C. § 2929.03 applies to instances where an indictment does not alleged aggravating circumstances with respect to a charge of aggravated murder (Doc. 9, pp. 64-65).  Thus, under O.R.C. § 2929.03(A)(1)(c), the trial court was authorized to sentence Wangler to life imprisonment, with parole eligibility after 25 years.  Accordingly, notwithstanding Wangler's attempt to challenge the constitutionality of O.R.C. § 2929.03, Wangler cannot demonstrate that appellate counsel was objectively unreasonable by not challenging the trial court's sentence which was imposed pursuant to the statute applicable to the offense for which he was convicted.  Moreover, O.R.C. § 2929.03 was not deemed unconstitutional at the time of Wangler's sentencing and Wangler cites no legal authority even suggesting that the constitutionality of O.R.C. § 2929.03 has been called into doubt.  Thus, Wangler is unable to demonstrate that appellate counsel acted unreasonably by failing to challenge the trial court's sentence of life imprisonment, with parole eligibility after 25 years, imposed pursuant to O.R.C. § 2929.03(A)(1)(c) and he is unable to demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the outcome would have been different.  Furthermore, he is unable to demonstrate that the state court of appeals' App. R. 26(B) determination was an unreasonable application of or contrary to clearly established federal law.

Based on the foregoing, the undersigned recommends that the Court **DISMISS and/or DENY** Ground Five.

### IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS and/or DENY** Wangler's Petition for federal habeas relief.

Dated: October 19, 2015

_____
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).